IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SVONDO WATSON, )
#B-67687, )
                                    )
         Plaintiff,                  )
                                    )
     vs.                             )    Case No. 17-CV-873-MJR
                                    )
JOHN BALDWIN,                        )
KIMBERLY BUTLER,                     )
FRANK EOVALDI,                       )
KELLIE ELLIS, and                    )
JOHN DOE,                            )
                                    )
         Defendants.                 )

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Svando Watson, an inmate currently housed at Menard Correctional Center ("Menard"), filed this *pro se* action pursuant to 42 U.S.C. § 1983. Plaintiff brings claims relating to an alleged excessive force incident occurring on August 15, 2015. In connection with these claims, Plaintiff sues John Baldwin (IDOC director), Kimberly Butler (Menard's former warden), Frank Eovaldi (described as a major and a lieutenant at Menard), Kellie Ellis (described as a lieutenant at Menard), John Doe # 1 (first Menard correctional officer involved in the excessive force incident), and John Doe # 2 (second Menard correctional officer involved in the excessive force incident).[1] In his request for relief, Plaintiff seeks monetary damages and any

---

[1] According to the Complaint, two unidentified correctional officers were involved in the excessive force incident. (Doc. 1, pp. 4, 8-15). To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename the John Doe Defendant as follows: (1) John Doe # 1 (first Menard correctional officer involved in the excessive force incident) and (2) John Doe # 2 (second Menard correctional officer involved in the excessive force incident). *See* FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").

1

further relief that the Court deems just. (Doc. 1, p. 14). However, in the body of the Complaint, Plaintiff suggests that he needs surgery to repair injuries related to the excessive force incident. (Doc. 1, p. 9).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Preliminary Matter – Motion to Supplement

Plaintiff has filed a Motion for Leave to Amend/Supplement the Complaint. (Doc. 6). Plaintiff seeks to "have the record reflect that defendants John Baldwin and Kimberly Butler for the purpose of discovery are being sued only in their official capacity." (Doc. 6, p. 1). Plaintiff further states that all other defendants are being sued in their individual and official capacities. *Id.*

The motion shall be denied for two reasons. First, the Court does not accept piecemeal amendments to a complaint. Second, the request is unnecessary. The Court addresses the capacity in which each defendant may be sued in this screening order. Accordingly, Plaintiff's request is **DENIED**.

## The Complaint

**Plaintiff's Prior Health History**

Plaintiff suffers from a degenerative disease called cervical spondylosis. (Doc. 1, p. 8). The vertebrae in Plaintiff's neck (2, 3, 4, 5, 6, and 7) are not properly aligned. (Doc. 1, p. 9). Accordingly, any aggravation to the neck causes the vertebrae to pinch the nerves rendering a loss of strength in the arms. *Id.* Plaintiff contends that the alleged excessive force incident (described below) has accelerated and/or worsened the permanent nerve damage to Plaintiff's neck. *Id.* Plaintiff claims he needs surgery to repair the nerve damage and relieve the pain he is suffering in his neck and left arm. *Id.*

**Excessive Force Incident**

On August 15, 2015, at approximately 5:30 p.m., Sadi Horemann (a nurse working at Menard) lodged a complaint against Plaintiff. (Doc. 1, p. 7). Nurse Horemann alleged that Plaintiff groped her and made an inappropriate comment. *Id.*

At approximately 6:00 p.m., Plaintiff was approached by Sergeant Demond (not a party to this action), who instructed Plaintiff to step outside. *Id.* Plaintiff fully complied with the order and stepped outside. *Id.* Plaintiff was immediately grabbed on the left arm by Eovaldi, a lieutenant or major, and Ellis, also a lieutenant. *Id.* Eovaldi and Ellis escorted Plaintiff to the elevator, without placing him in handcuffs. (Doc. 1, p. 8). Eovaldi ordered Plaintiff to get on his knees and Plaintiff complied. *Id.* Eovaldi then pushed Plaintiff; face first, onto the floor of the elevator. *Id.* Eovaldi kicked Plaintiff in the right side of his body, striking Plaintiff's ribs and knocking the wind out of Plaintiff. *Id.* Eovaldi continued kicking Plaintiff while he was on the floor. *Id.* John Doe # 1, a correctional officer, also kicked Plaintiff while he was lying on the floor. *Id.* John Doe # 1 repeatedly kicked Plaintiff in his buttocks and right thigh. *Id.* He also kicked Plaintiff between his legs, striking Plaintiff in the testicles. *Id.* At some point, Eovaldi placed Plaintiff in handcuffs. *Id.* While Plaintiff was handcuffed, John Doe # 1 kicked Plaintiff in the side of his head twice. *Id.* The first kick caused Plaintiff's neck to make a cracking sound and Plaintiff felt a numbing sensation in both arms. *Id.*

Ellis was present and observed the use of excessive force while Plaintiff was in the elevator. (Doc. 1, p. 9). Although Plaintiff was crying out in pain and asking for help, Ellis took no action to intervene on Plaintiff's behalf. *Id.*

Subsequently, Plaintiff was dragged to the north two segregation building and placed in the strip search cage. (Doc. 1, p. 10). Plaintiff was still handcuffed. *Id.* Eovaldi ordered Plaintiff to get on his knees and Plaintiff complied. *Id.* Eovaldi and two correctional officers (John Doe # 1 and John Doe # 2) entered the strip search cage. *Id.* Eovaldi removed the handcuffs from Plaintiff. *Id.* Eovaldi and the John Doe officers began to beat Plaintiff again. *Id.* When the beating stopped, one of the John Doe officers ordered Plaintiff to stand up, yelling, "Fight back

4

nigger. Come on tough guy. You're a bitch. You're a pussy. Fight back. Come on." *Id.* Plaintiff refused to fight back. *Id.*

Eovaldi then ordered Plaintiff to remove his clothes. (Doc. 1, p. 11). Plaintiff complied. *Id.* Eovaldi handcuffed Plaintiff, with his hands behind his back. *Id.* Eovaldi grabbed the handcuffs, lifting Plaintiff's arms into the air. *Id.* Eovaldi lifted the handcuffs so high, Plaintiff felt that his shoulders were about to be dislocated. *Id.* Eovaldi then used a second pair of handcuffs to handcuff Plaintiff's arms to the bars in the strip search cage. *Id.* Plaintiff was left alone, naked, and cuffed to the cage for approximately one hour. *Id.* Plaintiff describes being on "the tips of his toes like a piece of meat in a slaughter house." *Id.*

Internal affairs interviewed Plaintiff on two separate occasions and on August 16, 2015, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac"). (Doc. 1, pp. 12). While at Pontiac, Plaintiff was urinating blood. *Id.* Plaintiff was eventually examined by the medical director, Dr. Tilden. Plaintiff told Dr. Tilden that he was assaulted by a lieutenant and two correctional officers. *Id.* According to the Complaint, X-rays would later reveal that Plaintiff had a small hair line fracture at his ninth rib. *Id.*[2] Plaintiff was told that the only thing doctors could do was attempt to treat Plaintiff's pain. (Doc. 1, p. 13). Accordingly, Plaintiff's medication was altered to assist with pain management. (Doc. 1, pp. 12-13).

Subsequently, Plaintiff filed a grievance that was directed to Baldwin. (Doc. 1, pp. 13, 25-42).

---

[2] A letter denying Plaintiff's grievance suggests that Plaintiff's rib was not fractured. (Doc. 1, p. 42). However, Plaintiff has also attached an affidavit from another inmate stating that he overheard an x-ray technician and a physician tell Plaintiff that he had a fractured rib. (Doc. 1, p. 22).

5

## Dismissal of Certain Defendants and Official Capacity Claims

**Baldwin and Butler**

Plaintiff has named Baldwin, IDOC's director, and Butler, Menard's former warden, as defendants in the Complaint. The Complaint, however, does not include any allegations establishing that either Defendant was personally involved in the underlying constitutional violations.

Plaintiff alleges that he submitted a grievance to Baldwin, complaining about the use of excessive force, after the incident occurred. This allegation, standing alone, is insufficient to subject Baldwin to liability in his individual capacity. *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017); *Aguilar v. Gaston-Camara*, 2017 WL 2784561, *4 (7th Cir. 2017); *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). No allegations are directed against Butler; she is only referenced in Plaintiff's case caption. This is insufficient to bring an individual capacity claim against Butler. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Baldwin and Butler are also not appropriate official capacity defendants. As is set forth below, Jacqueline Lashbrook, Menard's current warden, is the appropriate official capacity defendant for purposes of (1) assisting in discovery pertaining to identification of the unknown defendants and (2) implementing any injunctive relief that might be ordered.

Accordingly, Baldwin and Butler shall be dismissed from the action, without prejudice, for failure to state a claim upon which relief can be granted.

**Official Capacity Claims**

Plaintiff may not pursue any official capacity claims against the remaining Defendants (Eovaldi, Ellis, John Doe # 1, and John Doe # 2). Individuals are not "persons" in their official

capacities under § 1983. Plaintiff can only bring claims against individuals that were personally involved in the deprivation of which he complains. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Therefore, to the extent that Plaintiff has attempted to bring claims against Eovaldi, Ellis, John Doe # 1, and/or John Doe #2 in their official capacities, those claims shall be dismissed.

### Merits Review Under § 1915(A)

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Eighth Amendment excessive force claim against Eovaldi, John Doe # 1, and John Doe # 2 for beating Plaintiff on August 15, 2015.
>
> **Count 2 –** Eighth Amendment claim against Ellis for failing to intervene and protect Plaintiff as he was beaten by prison officials on August 15, 2015.
>
> **Count 3 –** Eighth Amendment claim against Eovaldi, John Doe # 1, and John Doe # 2 for failing to ensure that Plaintiff received medical care for the injuries he sustained on August 15, 2015.

### Count 1

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Robinson v. California*, 370 U.S. 660 (1962)). The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). The "core requirement" of an excessive force claim is that the prison guard "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm."

*Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). *See also Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010).

The allegations in the Complaint support an excessive force claim against the three Defendants named in connection with this claim, *i.e.*, Eovaldi, John Doe # 1, and John Doe # 2. Plaintiff alleges that he was beaten by these Defendants on August 15, 2015. At the time, Plaintiff claims he was in compliance with Defendants orders and/or was not resisting. Additionally, portions of the assault occurred while Plaintiff was handcuffed, on his knees, and/or laying on the floor. Count 1 is subject to further review against Eovaldi, John Doe # 1, and John Doe # 2.

**Count 2**

Prison officials may be liable for failing to intervene and take reasonable steps to stop the use of excessive force by fellow officers, if they have "a realistic opportunity to intervene and prevent the harm from occurring" but fail to do so. *Green v. Chvala*, 567 F. App'x. 458 (7th Cir. 2014) (quoting *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). In the Complaint, Plaintiff alleges that Ellis was present while Eovaldi and the unidentified correctional officers beat Plaintiff in the elevator on August 15, 2015. He allegedly stood by and watched as all three officers used excessive force against Plaintiff. These allegations support an Eighth Amendment failure to intervene claim against Ellis. Accordingly, Count 2 shall receive further review as to Ellis.

**Count 3**

State officials also violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976);

Chatham v. Davis, 839 F.3d 679, 684 (7th Cir. 2016). To state a claim, a plaintiff must demonstrate that he suffered from a serious medical condition (i.e., objective standard) and the state official responded with deliberate indifference (i.e., subjective standard). *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). The Complaint includes allegations against that satisfy both components of this claim for screening purposes as to Eovaldi, John Doe # 1, and John Doe # 2.

After kicking and punching Plaintiff all over his body, including his head, neck, ribs, and genitals, Defendants did not immediately seek medical care for Plaintiff. Instead, Plaintiff was handcuffed, naked, to the strip search cage. Plaintiff claims he was restrained in such a way that he was standing on the tips of his toes like a piece of meat. Plaintiff was left in this position for an hour and was eventually transferred to Pontiac. At Pontiac, Plaintiff was urinating blood and x-rays revealed a fractured rib. These allegations, construed liberally in favor of Plaintiff for screening purposes, satisfy the objective and subjective components of this claim against Eovaldi, John Doe # 1, and John Doe # 2. Accordingly, Count 3 shall receive further review against them.

**Request for Injunctive Relief**

In the body of the Complaint, Plaintiff suggests that he requires surgery to repair pre-existing injuries that were worsened by the alleged assault. (Doc. 1, pp. 8-9). The Court construes this as a request for injunctive relief at the close of the case. If Plaintiff needs medical care during the pendency of this action or wishes to seek some other type of interim relief, he should file a motion for a TRO or a preliminary injunction pursuant to Rule 65(a) or (b) indicating the exact form of relief he seeks, the reasons why he seeks said relief, and the factual

allegations supporting his request. He may do so at any time during the pending action.

Further, with respect to Plaintiff's request for injunctive relief, the warden is the appropriate party. *Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, the Clerk will be directed to add Jacqueline Lashbrook, the warden of Menard, in her official capacity, for purposes of carrying out any injunctive relief that is ordered.

## Identification of Unknown Defendants

Plaintiff will be allowed to proceed against the unknown defendants: John Doe # 1 (first Menard correctional officer involved in the excessive force incident) and John Doe # 2 (second Menard correctional officer involved in the excessive force incident). These individuals must be identified with particularity before service of the Complaint can be made on them. Also, where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

For that reason, Menard's current warden, Jacqueline Lashbrook, in her official capacity, shall be responsible for responding to discovery (informal or formal) aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the unknown defendants are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

**Pending Motions**

(1) Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 2) shall be addressed in a separate order of the Court. However, as it appears Plaintiff is indigent, the Court will order service as a matter of course upon all Defendants who remain in this action pursuant to this screening order.

(2) Plaintiff's Motion for Recruitment of Counsel (Doc. 4) shall be **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for disposition.

(3) As noted above, Plaintiff's Motion for Leave to Amend/Supplement is **DENIED**.

**Disposition**

**IT IS HEREBY ORDERED** that **BUTLER** and **BALDWIN** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted. The Clerk of the Court is **DIRECTED** to terminate these individuals as parties in CM/ECF.

The Clerk of the Court is **DIRECTED** to rename the **JOHN DOE** defendant as follows: **JOHN DOE # 1** (first Menard correctional officer involved in the excessive force incident) and **JOHN DOE # 2** (second Menard correctional officer involved in the excessive force incident)

The Clerk of the Court is **DIRECTED** to add **JACQUELINE LASHBROOK, the warden of Menard**, in her official capacity, so that she may (1) participate in discovery aimed at identifying the John Doe Defendants with particularity and (2) address any injunctive relief that might be granted.

**IT IS FURTHER ORDERED** that **COUNT 1** shall receive further review as to **EOVALDI, JOHN DOE # 1,** and **JOHN DOE # 2.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall receive further review as to **ELLIS.**

**IT IS FURTHER ORDERED** that **COUNT 3** shall receive further review as to **EOVALDI, JOHN DOE # 1,** and **JOHN DOE # 2.**

**IT IS FURTHER ORDERED** that all *official capacity* claims against **EOVALDI, ELLIS, JOHN DOE # 1,** and **JOHN DOE # 2** are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for **EOVALDI, ELLIS,** and **LASHBROOK**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If any defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Other than notice to be sent to **LASHBROOK,** as ordered above, service shall not be made on the Unknown Defendants (John Does 1 and 2) until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it

is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Williams for further pre-trial proceedings, including for a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 5). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 31, 2017**

s/ MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**
